IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAMANTHA GROME,<br><br>             Plaintiff,<br><br>vs.<br><br>USAA SAVINGS BANK,<br><br>             Defendant. | Case No. 4:19-cv-03080 |

**DEFENDANT USAA SAVINGS BANK'S
BRIEF IN SUPPORT OF MOTION SUMMARY JUDGMENT**

Prepared and Submitted By:

David M. Krueger (*Admitted Pro Hac Vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
216.363.4500
dkrueger@beneschlaw.com

and

Anna S. Forman #25756
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, Nebraska 68102-2186
(402) 346-6000
anna.forman@kutakrock.com

Pursuant to Local Rule 7.1, Defendant USAA Savings Bank ("**USAA SB**") submits the following Brief in Support of its Motion for Summary Judgment.

## I. INTRODUCTION

USAA SB places non-telemarketing calls to the telephone numbers of its members who consent to receiving calls to discuss, among other things, past due account balances.  Here, USAA SB called the telephone number that Plaintiff Samantha Grome ("**Plaintiff**") provided in her online account to USAA SB as a point-of-contact telephone number

Plaintiff then filed this lawsuit against USAA SB, alleging that she revoked consent to receive calls, but that USAA SB continued to call her using an automatic telephone dialing system ("**ATDS**"), in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) ("**TCPA**").  Unfortunately for Plaintiff, the United States Supreme Court recently clarified that the definition of an ATDS does *not* include dialing systems, like USAA SB's, that merely store and dial telephone numbers from pre-existing lists.  *Facebook, Inc. v. Duguid*, No. 19-511, 2021 U.S. LEXIS 1742, *14–15 (2021).  USAA SB is entitled to summary judgment.

## II. STATEMENT OF MATERIAL FACTS

### A. PLAINTIFF'S RELATIONSHIP WITH USAA SB.

1. On December 30, 2015, USAA approved Plaintiff's application for a Visa credit card (the "**Account**").  (Declaration of Michelle Deneen, ("**Deneen Decl.**") ¶ 3, attached as **Exhibit 1**, citing Credit Card Application attached as **Exhibit 2**).  Plaintiff applied for the Account online and provided USAA SB with her telephone number (the "**x6636 Number**") as a point-of-contact number.  (Deneen Decl. ¶ 4; Deposition of Samantha Grome ("**Grome Dep.**"), 14:9–22, attached as **Exhibit 3**).

2. When Plaintiff's Account became delinquent, USAA SB began to place telephone calls to the x6636 Number in an attempt to collect the debt.  (Deneen Decl. ¶ 7).

3. On July 31, 2018, Plaintiff alleges that she placed a call to USAA SB and instructed USAA SB to stop calling her, but that the calls continued through October 2018. (Doc. 1, ¶¶ 16–20).

4. When making the at-issue calls to Plaintiff, USAA SB used dialing equipment known as the Aspect Unified IP (the "**Aspect UIP**"). (Deneen Decl. ¶ 8).

5. The Aspect UIP is not capable of generating random telephone numbers, sequential blocks of telephone numbers, or any types of telephone numbers for dialing. (Deneen Decl. ¶ 9). Rather, the Aspect UIP is only capable of making telephone calls to specific telephone numbers from dialing lists created and loaded by USAA SB. (*Id.* at ¶ 10).

6. Unless and until a specific list of telephone numbers is provided to the Aspect UIP, it cannot initiate any calls. (*Id.* at ¶ 11).

7. To create the dialing lists, USAA SB uses a system called Aspect Advanced List Management ("**ALM**"), which is a database of telephone numbers that members provide to USAA SB. (*Id.* ¶ 12).

8. Each day USAA SB representatives identify accounts of members they wish to call the next day and use ALM to create a specific list of telephone numbers associated with those accounts, referred to as "campaigns." (*Id.* ¶ 13).

9. Campaigns are decided by different criteria, such as whether an account is overlimit, the period of delinquency, and amount of debt, amongst other factors. (*Id.* ¶ 14). ALM then creates a specific list of numbers for accounts that match the campaign criteria for calling on the next day and USAA SB transfers that call list to the Aspect UIP. (*Id.* ¶ 15).

10. The Aspect UIP is a predictive dialer. *See* fn. 3 *infra.* It begins dialing telephone numbers on the campaign call list, employing an algorithm to monitor the number of available

3

agents ready to take calls, and controlling the speed the remaining telephone numbers on the call list are dialed. (Deneen Decl. ¶ 22). The algorithm ensures that when a person answers the phone, a live USAA SB call agent is available and connected to the call. (*Id.*).

11. Here, Plaintiff's x6636 Number was included in campaign dialing lists after her account became delinquent, and the Aspect UIP dialed the x6636 Number accordingly. (*Id.* ¶ 23).

12. Plaintiff admits that the calls she received were not random and that USAA SB was specifically trying to get ahold of her regarding the Account. (Grome Dep., 63:17–24).

B. **PLAINTIFF'S EXPERT'S OPINION REGARDING THE ASPECT UIP.**

13. Plaintiff's expert, Randall Snyder, opines that the Aspect UIP is an ATDS for two reasons: (1) it supposedly uses a "sequential number generator" because Aspect UIP can sort, filter, and "re-sequence" numbers on a call list; and (2) the underlying Microsoft SQL Server (that the Aspect UIP uses to store the dialing lists) is capable of creating random and sequential numbers if a person with knowledge and credentials enters the SQL Server directly and programs SQL to do so. (Supplemental Disclosure of Randall Snyder, dated March 9, 2020, ¶¶ 49–54, 68–69, 74–75 attached hereto as **Exhibit 4**).

14. However, negating his own opinions, Mr. Snyder openly admits that the Aspect UIP dials numbers based on the dialer rules, and itself is not capable of generating and adding random or sequential blocks of numbers to the list of numbers on a Campaign. (Deposition of Randall Snyder, Part I ("**Snyder Dep. I**"), taken March 4, 2020, 37:7–12, 55:9–16, 57:13–20, attached hereto as **Exhibit 5**).

15. Mr. Snyder further admits that the Aspect UIP system interface does *not* allow users to choose or program any SQL commands into Aspect UIP to generate random or sequential

numbers. (Deposition of Randall Snyder, Part II, ("**Snyder Dep. II**") taken on May 26, 2020, 22:12–21; 23:8–12 attached as **Exhibit 6**). [1]

16. Although Mr. Snyder has never seen, used, or inspected an Aspect UIP, his opinion is that an "IT person" could go *outside* the Aspect UIP, *separately* enter the SQL Server directly, then manipulate the Microsoft SQL-specific coding to allow the SQL Server to generate random telephone numbers. (Snyder Dep. II, 7:16–8:22, 23:13–16).

17. Mr. Snyder admits that he is not an expert in computer programming or Microsoft SQL. (Snyder Dep. I, 10:14–18, 57:6–9).

18. In his rebuttal report, Jan Kostyun, describes the various shortcomings and misleading nature of Mr. Snyder's untested and uninformed theory. (*See generally* Expert Rebuttal Report of Jan Kostyun, dated April 30, 2020, attached hereto as **Exhibit 7**).

19. Critically, Mr. Snyder does not allege that USAA SB actually used any of the theoretical randomization capabilities of the underlying SQL System. This makes sense: USAA SB has no need or desire to make indiscriminate calls. The calls at issue were not random; they were specifically made to Plaintiff.

### III.   LAW

#### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the evidence submitted shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party possesses the initial burden of showing the

---

[1] USAA SB has filed a Motion to Exclude Mr. Snyder's opinions and testimony (*see* Docs. 50, 51), as Mr. Snyder is unqualified to offer the speculative, unreliable, and irrelevant opinions on the theoretical capabilities of Aspect UIP to support random number generation through Microsoft SQL, and his separate opinion regarding the sequential number generation has been routinely rejected by recent court decisions.

absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Gilkerson v. Neb. Colocation Ctrs.*, LLC, 859 F.3d 1115, 1118 (8th Cir. 2017).

In response, to defeat summary judgment, the non-movant must present affirmative evidence to show that there is a genuine issue of material fact and must "do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Uhiren v. Bristol-Myers Squibb Co.*, 346 F.3d 824, 827 (8th Cir. 2003) (citation omitted). "'Factual disputes that are irrelevant or unnecessary will not be counted,' and a mere scintilla of evidence supporting the nonmovant's position will not fulfill the non-movant's burden." *Id.* (citation omitted).

### B. THE TCPA

Subsection (b)(3)(B) of the TCPA creates a private cause of action for a violation of section (b). Plaintiff does not specify which provision of 47 U.S.C. § 227(b) she alleges USAA SB violated. (*See* Doc. 1, ¶¶ 1, 15–16). Substantively, the only potential subsection at issue can be Section (b)(1)(A)(iii), which provides that it shall be unlawful for any person:

> (A) to make any call (other than a call made … with the prior express consent of the called party) using any automatic telephone dialing system … (iii) to any telephone number assigned to a … cellular telephone service….

47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA does not state a blanket prohibition against calling cellular telephones; it *only* prohibits calls that are made using an ATDS or an artificial prerecorded voice if no prior express consent exists for the call.[2] Thus, to establish a TCPA claim, Plaintiff must prove: (1) USAA SB called Plaintiff's cellular telephone number; (2) using an ATDS; and (3) without Plaintiff's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii); *see, e.g., Flores v. Adir Int'l, LLC*, No. CV 15-00076, 2015 U.S. Dist. LEXIS 92176, *7 (C.D. Cal. July 15, 2015) (listing elements of claim).

---

[2] Although Section 227(b)(1)(A)(iii) imposes liability for calls made using artificial or prerecorded voices without consent, Plaintiff does not allege that USAA SB made any prerecorded/artificial voice calls. (*See generally* Doc. 1).

USAA SB is entitled to summary judgment because there are no issues of material fact to preclude a finding that USAA SB did not use an ATDS as a matter of law.

### C. ATDS: THE EQUIPMENT IN QUESTION MUST USE A RANDOM OR SEQUENTIAL NUMBER GENERATOR

#### 1. The statutory definition of an ATDS and (prior) Circuit split.

An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

> The statute's reference to a "random or sequential number generator" reflects that, when the statute was enacted in 1992, telemarketers typically used autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings. … [and] and refers to the numbers themselves rather than the manner in which they are dialed.

*Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 372 (3d Cir. 2015) ("**Dominguez I**").

Before the Supreme Court's decision in *Facebook*, a circuit split emerged over the definition of an ATDS. Essentially, the issue was whether: (1) dialing must be capable of *actually* generating random or sequential telephone numbers to constitute an ATDS; or (2) whether any type of "automated" dialing equipment that dialed from a database of preselected numbers, such as a predictive dialer,[3] constituted an ATDS.

The Third, Seventh, and Eleventh Circuits adopted the former "narrow" definition of an ATDS, demanding that equipment be capable of generating random or sequential blocks of telephone numbers for dialing. *Gadelhak v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2020); *Glasser*

---

[3] "A predictive dialer, such as [an] Aspect system, employs an algorithm 'to ensure that when a consumer answers the phone, a sales person is available to take the call.' However, a predictive dialer lacks the capacity to generate telephone numbers and instead calls from a pre-determined list." *DeNova v. Ocwen Loan Servicing, LLC*, No. 8:17-cv-2204, 2019 U.S. Dist. LEXIS 163014, *3-4 (M.D. Fla. Sept. 24, 2019) (citations omitted).

v. *Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) ("***Dominguez II***").

The Second, Sixth, and Ninth Circuits adopted the latter "broad" definition of an ATDS, holding that predictive dialers and any other type of automated dialing "without human intervention" from a stored list of numbers constituted an ATDS. *Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

### 2. The Supreme Court's decision in *Facebook*.

On April 1, 2020, the Supreme Court accepted *certiorari* in *Facebook* "to resolve [the] conflict among the Courts of Appeals." *Facebook*, 2021 U.S. LEXIS 1742, at *9–10. The Supreme Court decisively *and unanimously* endorsed the legal standard previously adopted by the Third, Seventh, and Eleventh Circuits, and held: "a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Id.* at *19.

> The question before the Court is whether that definition encompasses equipment that can "store" and dial telephone numbers, even if the device does not "us[e] a random or sequential number generator." ***It does not***. To qualify as an "automatic telephone dialing system," a device ***must*** have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator.

*Id.* at *6 (emphasis added).

The Court agreed that dialing equipment that dialed random telephone numbers created a nuisance for emergency services and persons with unlisted telephone numbers, and that dialing "sequential blocks of telephone numbers . . . could simultaneously tie up all the lines of any business with sequentially numbered phone lines." *Id.* at *7. The Court agreed that the ATDS definition was designed to regulate these "uniquely harmful" problems associated with equipment

8

that indiscriminately called random or sequentially numbered lines of the public. *Id.* at *7–8, citing H. R. Rep. No. 102-317, p. 24 (1991).

In reaching this conclusion, the Court expressly rejected the Ninth Circuit's broader interpretation, stating that "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id.* at *14.

"Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question ***must use*** a random or sequential number generator." *Id.* at *13 (emphasis added).

### IV. ARGUMENT

#### A. USAA SB IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TCPA CLAIM.

##### 1. The Aspect Dialing System Is Not an ATDS as a Matter of Law.

The Aspect UIP does not have "the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook*, 2021 U.S. LEXIS 1742, at *6; (Deneen Decl., ¶ 9). Instead, the Aspect UIP is only capable of dialing telephone numbers from pre-set lists of telephone numbers, created by USAA SB, for dialing specific telephone numbers associated with accounts of its members, including Plaintiff. (Deneen Decl. ¶¶ 9–22).

Indeed, Plaintiff's expert admits that the Aspect UIP is not capable of generating any telephone numbers, let alone using a random or sequential number generator. (Snyder Dep. I, 55:13–16, 58:19). Mr. Snyder's two alternative opinions hold no merit.

9

### a. "Re-sequencing" a list of numbers is not sequential number generation.

Mr. Snyder's first opinion—that Aspect UIP uses a "sequential number generator" because it can take a list of specific telephone numbers, re-sort those numbers, and thereby create a new "sequence" of telephone numbers (Supplemental Disclosure, ¶¶ 49–56)—is not "sequential" number generation under the TCPA.

Sequential number generation means "large sequential blocks" of telephone numbers and "refers to the numbers themselves rather than the manner in which they are dialed," *Dominguez I*, 629 Fed. Appx. at 372; *e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1308 (11th Cir. 2020) ("Congress instead passed the law to prevent callers from accidently reaching 911 lines by dialing randomly or sequentially generated telephone numbers—a concern raised in the legislative debates" which does not include calls to "specifically programmed contact numbers") (citation omitted).

"'[S]equential number generation' means (for example) (111) 111-1111, (111) 111-1112, and so on." *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014). In discussing the prior split of interpretations of the ATDS definition (*i.e.*, dialing random or sequential blocks of numbers versus calling from a set list), the D.C. Circuit explained:

> To see why, it is helpful to understand that the ruling distinguishes between use of equipment to "dial random or sequential numbers" and use of equipment to "call[] a set list of consumers." Anytime phone numbers are dialed from a set list, the database of numbers must be called in *some* order—either in a random or some other sequence. As a result . . . "dialing random or sequential numbers" cannot simply mean dialing from a set list of numbers in random or other sequential order: if that were so, there would be no difference between "dialing random or sequential numbers" and "dialing a set list of numbers[.]"

*ACA Int'l v. FCC*, 885 F.3d 687, 702 (D.C. Cir. 2018) (emphasis in original).

In *Facebook*, the Supreme Court agreed with, *inter alia*, the Third, Eleventh, and D.C. Circuit's definition of what it means to use a "sequential number generator," noting that the

10

definition was specifically designed to regulate equipment that could dial "sequential blocks of telephone numbers," that "due to the sequential manner in which they could generate numbers, autodialers could simultaneously tie up all the lines of any business ***with sequentially numbered phone lines***," and that this was a "unique type of telemarketing equipment that risks . . . tying up all the sequentially numbered lines at a single entity." *Facebook*, 2021 U.S. LEXIS 1742, at *7, *14 (emphasis added). Mr. Snyder admits that the Aspect UIP does not have this capability. (Snyder Dep. I, 37:7–12, 55:9–16, 57:13–20). Mr. Snyder testified that the Aspect UIP can only "dial the numbers that are created in tables within ALM" but cannot generate the numbers out of "whole cloth by itself." (Snyder Dep. I, 55:13–16, 58:19).

The Supreme Court rejected the argument that equipment that makes "targeted" calls "linked to specific accounts" met the statutory definition of an ATDS (for either random or sequential number generation). *See id.* at *9. The Court concluded that "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id.* at *14. Mr. Snyder's theory that "re-sequencing" a specific list of numbers constitutes "sequential number generation" is incompatible with, and was rejected by, *Facebook*.

Even prior to *Facebook* courts routinely dismissed Mr. Snyder's opinion that "sequential" number generation included re-sorting a pre-determined list of numbers into a new "sequence." *See, e.g.*, *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606 (N.D. Iowa 2019); *Dominguez II*, 894 F. 3d at 120–21. For example, in *Thompson-Harbach*, the Northern District of Iowa rejected Mr. Snyder's same opinion that he offers now, concluding:

> the Court finds that the equipment used does not qualify as an ATDS. The Court therefore finds that defendant did not violate the TCPA by calling plaintiff simply by using equipment to store and call the number that plaintiff gave defendant. The critical missing feature that would have brought the device within the scope of the

11

TCPA is the capacity to randomly or sequentially produce or store a number and then call that number.

359 F. Supp. 3d at 626.

In fact, when applying the same standard that the Supreme Court adopted in *Facebook*, every court that has *ever* examined the Aspect UIP has held that it does not constitute an ATDS under the TCPA. *Id.*; *DeNova v. Ocwen Loan Servicing, LLC*, No. 8:17-cv-2204, 2019 U.S. Dist. LEXIS 163014, *3–9 (M.D. Fla. Sept. 24, 2019) ("A predictive dialer, such as [the] Aspect system, employs an algorithm 'to ensure that when a consumer answers the phone, a sales person is available to take the call.' However, a predictive dialer lacks the capacity to generate telephone numbers and instead calls from a pre-determined list."); *Brown v. Ocwen Loan Servicing LLC*, No. 8:18-cv-136, 2019 U.S. Dist. LEXIS 151236, *12 (M.D. Fla. Sept. 5, 2019) (holding that the "Aspect dialer is not an ATDS under the TCPA"); *Kloth-Zanard v. Bank of Am.*, No. 3:15-cv-1208, 2019 U.S. Dist. LEXIS 72425, *6–7, 26–28 (D. Conn. April 30, 2019) (same); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 963 (E.D. Mich. 2018) ("[T]he Aspect System does not possess the functions necessary to be an ATDS. The Aspect System dials from a set list, but that is not the same as dialing numbers using a random or sequential number generator.").

Given this unwavering precedent and backed by the legal standard unanimously adopted by the Supreme Court in *Facebook*, the Court should grant USAA SB summary judgment.

b. **The Aspect UIP cannot generate random or sequential numbers.**

Mr. Snyder's second theory—concocted in the aftermath of multiple courts and Circuits[4] rejecting his first opinion above—is that the Aspect UIP is capable of random and sequential

---

[4] After Plaintiff's January 14, 2020 supplemental disclosure, the Eleventh and Seventh Circuits issued opinions rejecting Mr. Snyder's same opinion again, holding that re-sorting, or dialing from an existing list of numbers is not sequential number generation. *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458 (7th Cir. 2020). During his first deposition, Mr. Snyder testified that he "did some additional work" over the "last couple months . . . looking at issues surrounding random number generation

number generation because of the theoretical capabilities of an underlying database system (Microsoft SQL) that Aspect UIP uses to store the campaign dialing lists. (Supplemental Disclosure, ¶¶ 68–69, 74–75).[5] This "underlying systems" theory also fails.

Critically, Mr. Snyder concedes that the Aspect UIP itself does *not* allow users to select or program any random or sequential number coding. (Snyder Dep. II, 22:12–21, 23:8–12). Instead, Mr. Snyder's untested theory is that an "IT person" could go *outside* the Aspect UIP, *separately* enter the Microsoft SQL Server directly, "manipulate" and input *coding* to allow the Microsoft SQL Server to generate random telephone numbers, and *then* upload those to the Aspect UIP. (*Id.* 20:7–17). To start, Aspect UIP and Microsoft SQL are separate systems. (Deneen Decl. ¶ 17). USAA SB's Microsoft SQL Server is simply used for storing database or file-based data that is accessed by the Aspect UIP in pulling specific lists for dialing. (*Id.* ¶ 16). It plays *no role* in creating any dialing lists or dialing and is simply used to store the Aspect UIP's call lists. (*Id.* ¶ 18).

As importantly, Mr. Snyder admits that neither USAA SB's Aspect UIP nor Microsoft SQL Server *actually have* such coding in their systems. Instead, Mr. Snyder states that someone *could* program SQL as he opines and admits that *until* his proffered coding was actually programmed into SQL, it could never generate any random or sequential numbers. (Snyder Dep. I, 56:10–15; 59:5–20). Despite proffering this opinion, Mr. Snyder openly admits that he is not an expert in

---

because that's become a big issue in the industry and in a few circuits." (Snyder Dep. I, 7:3–10). Four days later, Mr. Snyder submitted his Supplemental Disclosure, which contains the additional Microsoft SQL theory.

[5] For the reasons herein, USAA SB has filed a Motion to Exclude Mr. Snyder. (*See* Docs. 50, 51). Namely, Mr. Snyder's opinion is purely speculative (he has never tested or observed it), unreliable (he admits that the Aspect UIP interface does not allow users to implement the theoretical randomize number generator capabilities of the Microsoft SQL database), and irrelevant (he is not opining on the capabilities Aspect UIP system, but the capabilities of a separate Microsoft SQL database). In addition, Mr. Snyder agrees that he is not expert with regard to computer programming or Microsoft SQL. (Snyder Dep. I, 8:18–19, 10:14–18, 57:6–9).

Microsoft SQL, or even computer programming in general. (Snyder Dep. I, 8:18–19, 10:14–18, 57:6–9).

Jan Kostyun—an actual software programming, Microsoft SQL, and telephone industry expert—does not agree with Mr. Snyder's hypothetical theory. (*See generally* Kostyun Report). Mr. Kostyun's Report identifies several inaccuracies and oversimplifications in Mr. Snyder's flawed description of the ability of Aspect UIP to use features of Microsoft SQL for number generation. (*Id.* ¶¶ 28–64). As Mr. Kostyun notes, Mr. Snyder's theory is like claiming that Aspect UIP is an Islamic calendar simply because someone with sufficient knowledge could enter SQL and re-program it to display such information. (*Id.* at ¶¶ 38–41). This theory is meritless.

Equipment that requires reprogramming does not have the "capacity" to generate random or sequential telephone numbers under the TCPA. *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) ("In sum, we conclude that the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software. That definition does not include every smartphone or computer that might be turned into an autodialer if properly reprogrammed[.]"); *see also, e.g.*, *Dominguez II*, 894 F.3d at 121 (holding that plaintiff failed to demonstrate that the equipment had the "present capacity to function as an autodialer"); *ACA Int'l*, 885 F.3d at 696 (rejecting this sort of "top-to-bottom reconstruction" when determining whether equipment has the "capacity" to perform the functions of an ATDS). Any computer software can be re-programmed to do essentially anything based on the universe of potential underlying coding functions available to it. *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 789 (N.D. Ill. 2016) (rejecting the plaintiff's argument that "because a software developer could write a piece of code that dials [] random or sequential numbers," the equipment constitutes an ATDS).

Here, Mr. Snyder admits that the Aspect UIP cannot generate random or sequential telephone numbers for dialing and that a user cannot input the necessary coding in the Aspect UIP itself. What someone could do by going *outside* the actual dialing system and into a *separate* database, *programming new commands* to make that separate system generate a table of random or sequential numbers for dialing, and *then* provide that list to the actual dialing system is irrelevant.

Numerous courts and Circuits have considered—and rejected—this same argument from Mr. Snyder. In *Hagood v. Portfolio Recovery Assocs., LLC*, the court rejected Mr. Snyder's theory that equipment was capable of generating and dialing random and sequential numbers because the equipment's system—not the equipment itself—had the capability to do so, concluding "Snyder's 'overbroad, generalized assertions' regarding a system's ability to generate random numbers just because its operating system has that capability has been rejected before, notably by the Third Circuit Court of Appeals." No. 3:18-CV-1510-NJR, 2020 WL 1308388, *3–4 (S.D. Ill. Mar. 19, 2020), quoting *Dominguez II*, 894 F.3d at 120 (rejecting Mr. Snyder's same theory); *Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262, 1272 n.5 (S.D. Fla. Aug. 16, 2018) (rejecting Mr. Snyder's theory that a dialing system could be an ATDS "with the addition of 'a few dozen lines of software code'").

Shortly after *Hagood*, yet another court rejected Mr. Snyder's same theory that coding SQL to generate random or sequential numbers could somehow transform the dialing system into an ATDS. *Panzarella v. Navient Sols., LLC*, No. 18-3735, 2020 U.S. Dist. LEXIS 104746, *8–10 (E.D. Pa. June 16, 2020). As Mr. Snyder admitted both in *Panzarella* and here, Microsoft SQL "is among the most popular enterprise database technology systems in use." *Compare Id.* at *10, *with* (Supplemental Disclosure at ¶ 57). Like all the courts before it, the court in *Panzarella*

15

concluded that the statute would take on an "eye-popping sweep" if Mr. Snyder's theory held any water and would result in "a far-reaching and overly-broad interpretation of systems that may be considered ATDSs." *Id.* at *10.

This Court should similarly reject Mr. Snyder's "underlying systems" theory.

    **c. The Aspect UIP does not use any theoretical underlying capacity to generate random or sequential numbers.**

Even if the Aspect UIP could theoretically generate random or sequential numbers via manipulation of an underlying database, it still would not qualify as an ATDS because it *did not use* a random or sequential number generator to call Plaintiff. The Supreme Court's entire decision in *Facebook* is premised on requiring actual *use* of a random or sequential number generator because the ATDS definition was solely intended to regulate indiscriminate calls to the public, and not targeted calls to specific persons. *Facebook*, 2021 U.S. LEXIS 1742, at *17–18; *see also McEwen v. NRA of Am.*, No. 2:20-cv-00153-LEW, 2021 U.S. Dist. LEXIS 72133, at *9 n.3 (D. Me. Apr. 14, 2021). There is no dispute that USAA SB's calls to Plaintiff were specifically and intentionally made to her.

Likewise, there is no dispute that USAA SB did not use the theoretical randomization capabilities of the underlying Microsoft SQL software. And for good reason: USAA SB uses the Aspect UIP to contact its members at the specific point-of-contact numbers they provide associated with their accounts. Having or utilizing a random number generator would serve no purpose for USAA SB. Mr. Snyder's hypotheticals—whether about "re-sequencing" these specific lists of numbers or an "IT person" programming randomization codes (into a separate system, for that matter)—do not change that reality.

As such, USAA SB did not use an ATDS to place any calls to Plaintiff and her TCPA claim fails as a matter of law.

16

## V. CONCLUSION

For the reasons stated, the Court should grant USAA SB's Motion for Summary Judgment.

| Evidence Index | |
|---|---|
| **Exhibit No.** | **Exhibit Description** |
| 1 | Declaration of Michelle Deneen |
| 2 | Plaintiff's Credit Card Application |
| 3 | Deposition Transcript of Plaintiff Samantha Grome |
| 4 | Supplemental Disclosure of Randall Snyder, dated March 9, 2020 |
| 5 | Deposition Transcript of Randall Snyder, Part I |
| 6 | Deposition of Randall Snyder, Part II |
| 7 | Expert Rebuttal Report of Jan Kostyun, dated April 30, 2020 |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the word limits set forth in Local Rule 7.1(d). This brief contains 5,030 words, including the caption, headings, footnotes, and quotations, as counted by Microsoft Word Version 2101.

Dated this 10th day of May, 2021.

        USAA SAVINGS BANK, Defendant

        By  */s/ David M. Krueger*

            David M. Krueger (*Admitted Pro Hac Vice*)
            BENESCH, FRIEDLANDER, COPLAN
            & ARONOFF LLP
            200 Public Square, Suite 2300
            Cleveland, Ohio 44114-2378
            Telephone: 216.363.4500
            Facsimile: 216.363.4588
            dkrueger@beneschlaw.com

            -AND-

            Anna S. Forman, #25756
            KUTAK ROCK LLP
            The Omaha Building
            1650 Farnam Street
            Omaha, NE 68102
            Telephone: (402) 346-6000
            Facsimile: (402) 346-1148
            Anna.Forman@KutakRock.com

        *Attorneys for Defendant USAA Savings Bank*

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants.

                                                      */s/ David M. Krueger*
                                                      Counsel for Defendant USAA Federal Savings Bank