IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SAMANTHA GROME,

              Plaintiff,

vs.

USAA SAVINGS BANK,

              Defendants.

4:19-CV-3080

MEMORANDUM AND ORDER

The plaintiff, Samantha Grome, received several collection calls from the defendant, USAA Savings Bank, attempting to collect on alleged debts incurred through the use of a credit card issued by the bank. Filing 1 at 2. Grome sued USAA for violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227 (b)(1)(A)(iii), alleging that the bank used an "automatic telephone dialing system" to call her cellphone. Filing 1 at 3.

This matter is before the Court on USAA's motion for summary judgment (filing 52). The bank argues that it did not use an "automatic telephone dialing system" and therefore did not violate the TCPA. *See* Filing 53. For the reasons set forth below, USAA's motion for summary judgment will be granted.

## I. BACKGROUND

On December 30, 2015 USAA approved Grome for a credit card. Filing 53-1 at 1; *see* filing 53-2. Grome provided the bank with her telephone number as part of the application process. Filing 53-2 at 1. On July 24, 2018, USAA began to call Grome, at the number provided, in an attempt to collect payment for Grome's delinquent credit card account. Filing 53-1 at 2. Grome alleges that

on July 31, 2018, she called USAA and requested that they stop calling her. Filing 1 at 3. The calls did not stop and from August 1, 2018 to October 31, 2018, Grome received 224 calls from USAA at the number attached to her account. Filing 60 at 3; *see* filing 60-1. Grome testified that the calls placed to her number were not random solicitation calls and that the bank was trying to reach her about her account. Filing 53-3 at 5.

To make the calls to Grome, USAA used a dialing system known as Aspect Unified IP (Aspect UIP). Until a specific list of telephone numbers is provided to the Aspect UIP, it cannot initiate calls. So, the Aspect UIP called numbers from lists created by and transferred to the system by a USAA representative. Those lists, called "campaigns," were generated using Aspect Advanced List Management (ALM)—a database containing telephone numbers provided by USAA members—and based on certain criteria, *e.g.*, whether an account was over-limit, the period of delinquency, and the amount of debt. Filing 53 at 3; filing 60 at 2; *see also* filing 53-4 at 7. Grome's phone number was included in a campaign dialing list after her account became delinquent. Filing 53 at 4, filing 60 at 2.

The Aspect UIP is a what is known as a predictive dialer—it dials telephone numbers on a campaign list by employing an algorithm to control the speed at which the numbers are called and ensure a live call agent is available when a USAA member answers the phone. Filing 53 at 3-4; filing 60 at 2; *see also* filing 53-4 at 9-10. Grome retained Randall Snyder, a telecommunications specialist with a bachelor's degree in mathematics, to discuss certain functions the Aspect UIP system has the capacity to perform. Filing 60 at 3; *see generally* filing 53-4. Snyder reviewed the Aspect UIP software manual and user guide, as well as other documents, to arrive at his opinions but did not inspect USAA's system. *See* filing 53-4 at 5-6, 14.

According to Snyder the Aspect UIP is a predictive dialer that "has the capacity to store or produce numbers to be called, using a random and sequential number generator, and it is equipment that dials telephone numbers from a stored list of numbers without human intervention." Filing 53-4 at 15. Snyder further opined that campaign lists loaded into the Aspect UIP can be "filtered, sorted, and re-sequenced" according to prescribed rules set by ALM and USAA. Filing 53-4 at 17-18; *see* filing 53-5 at 13-14. Snyder testified that the Aspect UIP system was not capable, however, of generating telephone numbers from whole cloth. Filing 53-5 at 9, 13.

Snyder also opined that ALM supports a database technology known as Microsoft SQL Server. According to Snyder, Microsoft SQL Server databases, like ALM, require "structured language query" (SQL) to create, manage, and automate database functions. It is the SQL technology, said Snyder, which creates the campaign lists of telephone numbers in ALM. And according to Snyder, random number generation and sequential number generation "are functions inherent within the Microsoft SQL Server database technology used within the Aspect [UIP]." Filing 53-4 at 19-22. But Snyder testified that these "inherent functions" of the Microsoft SQL Server would have to be initiated by a human, and the Aspect UIP "doesn't do it by itself." Filing 53-5 at 14. He testified that "any IT person can log directly into the database outside of the Aspect application . . . and type in [the random number or sequential number generation] command . . . ." Filing 53-6 at 8. But Snyder also testified that he assumes most users of USAA's Aspect UIP would not have the access necessary to do that. Filing 53-6 at 9.

Snyder ultimately opined that the Aspect UIP is equipment which has "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers," as well as

- 3 -

"the capacity to dial stored telephone numbers without human intervention."
Filing 53-4 at 23.

USAA hired Jan Kostyun, a telecommunications and IT specialist with
a bachelor's degree in mathematics and master's degree in computer science,
to evaluate and respond to Snyder's opinions. Filing 53-7 at 1-4. Kostyun
generally agrees with Snyder that the Aspect UIP is capable of filtering,
sorting and resequencing telephone numbers in a campaign list according to
various rules (e.g., zip code). *See* filing 53-7 at 12-14. But Kostyun contrasts
that function of the Aspect UIP to auto dialers like the Voicent Phone List
Generator, which "generates a sequential or random list of numbers to be
dialed." *See* filing 53-7 at 15-16. Kostyun agrees with Snyder that the Aspect
UIP does not have such a function and cannot create numbers out of whole
cloth. *See* filing 53-7 at 17.

Moreover, Kostyun disagrees that the Microsoft SQL Server gives the
Aspect UIP the "inherent" power to be a random or sequential number
generator. *See* filing 53-7 at 17-19.  Kostyun explained that the Aspect UIP
does not "automatically inherit all of the functionality" of the Microsoft SQL
Server. Filing 53-7 at 19. Rather, the Aspect UIP internal software would have
to be modified in order to use the random or sequential number generation
power of the Microsoft SQL Server commands (which do exist). *See* filing 53-7
at 20-23. Kostyun emphasized his point by explaining that Microsoft SQL
server commands also exist to produce trigonometric values, and the current
date according to the Islamic calendar, but that no one could credibly claim the
Aspect UIP is "a trigonometry calculator or Islamic calendar or that the
software has the capability of acting as them without [those] codes being
actually programmed into the software's functionality." Filing 53-7 at 24-25.
Kostyun also pointed out that the Aspect UIP Administrator Guide and User

- 4 -

Manual (upon which Snyder heavily relied) never references the use of the SQL random or sequence functions or ever discusses the capability to generate random or sequential telephone numbers. Filing 53-7 at 27.

So, Kostyun opined that the Aspect UIP does not have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. Filing 53-7 at 26.

## II. STANDARD OF REVIEW

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). After the parties have had adequate time for discovery, a movant will be entitled to summary judgement against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018). The movant bears the initial responsibility of informing the Court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)(en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.* The nonmoving party cannot defeat a summary judgement motion by asserting the existence of some alleged factual dispute between the parties; the party must assert that there is a genuine issue of material fact.

- 5 -

*Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011). In order to show that disputed facts are material, the party opposing summary judgment must cite the relative substantive law in identifying facts that might affect the outcome of the suit. *Id.* The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791–92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. DISCUSSION

The TCPA makes it unlawful to

> make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. §227(b)(1)(A)(iii). So, a TCPA claim has three elements: (1) a call to a person's cellular telephone number, (2) using an automatic telephone dialing system, (3) without the person's prior express consent. *Id.*; *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 615 (N.D. Iowa 2019); *Smith v. Securus Techs., Inc.*, 120 F. Supp. 3d 976, 980 (D. Minn. 2015). Here, the first and third elements of Grome's claim are not in dispute. *See generally* Filing 53; Filing 60. Rather, the parties disagree as to whether the bank used an automatic telephone dialing system as defined under the TCPA. *See* Filing 53 at 9; Filing 60 at 7.

- 6 -

An automatic telephone dialing system (autodialer) is defined by the TCPA as "equipment which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." 47 U.S.C. §227(a)(1). Prior to 2021, the circuit courts of appeals were divided on what the phrase "using a random or sequential number generator" modified in the antecedent phrase. *Compare Gadelhak v. AT&T Servs.,* 950 F.3d 458, 460 (7th Cir. 2020) (holding that "using a random or sequential number generator" modifies both "store" and "produce"), *with Marks v. Crunch San Diego, LLC,* 904 F.34 1041, 1053 (9th Cir. 2018) (holding that the term automatic telephone dialing system means (1) equipment that has the capacity to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator).

The Supreme Court resolved this circuit split in *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163 (2021), holding that in order for a device to qualify as an automatic telephone dialing system it "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 1167. In doing so, the Supreme Court rejected the Ninth Circuit's holding that a device need only have the capacity to "store numbers to be called" and to "dial such numbers automatically." *Facebook,* 141 S. Ct. at 1168–69.

Grome argues that under *Facebook* a device qualifies as an autodialer if it uses a random or sequential number generator to determine the order to pick phone numbers to be dialed from a preproduced list. Filing 60 at 7-8. And according to Grome, the Aspect UIP system used by USAA did just that. Filing 60 at 8-9. But USAA argues that the Aspect UIP simply re-sequenced numbers from an existing list, and did not use a random or sequential number generator at all. *See* filing 53 at 10-12. The Court agrees with USAA.

First, the Supreme Court specifically rejected the argument that a device that stores numbers and then dials those numbers automatically was an autodialer. *Facebook*, 141 S. Ct. at 1168–69. *Facebook* made clear that "whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Id.* at 1170–71. In reaching its holding, the Supreme Court emphasized the legislative history and the statute as a whole which clearly sought to prevent autodialers from "dialing emergency lines randomly or tying up all the sequentially numbered lines" at a single business. *Id.* at 1167, 1171. And the Supreme Court explained "expanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id.* at 1171.

Here, the undisputed facts are that the Aspect UIP does *not* randomly or sequentially generate numbers from whole cloth and is not capable of dialing telephone numbers beyond those stored in the campaign lists uploaded by USAA. Filing 53-4 at 9, 13. And, while Snyder[1] and Kostyun disagree as to the level of work necessary to allow ALM and the Aspect UIP to use non-standard Microsoft SQL Server commands to generate random or sequential numbers, it's undisputed that USAA Aspect UIP *did not* use those commands. Filing 53 at 3; filing 60 at 2. Rather, the parties agree that USAA representatives identified the accounts of members, like Grome, who needed to be contacted regarding their accounts and used ALM to generate a corresponding list. Filing 53 at 3, filing 60 at 2.

---

[1] The Court recognizes that USAA seeks to exclude the entirety of Snyder's opinion as overly speculative, irrelevant and erroneous. Filing 50. But, for the sake of argument, the Court assumes without deciding that Snyder's opinion would be admissible.

The Court is also not persuaded by Grome's argument that because the Aspect UIP can automatically re-sequence numbers on the campaign list, it qualifies as an autodialer. Grome relies on footnote 7 from *Facebook*, which in relevant part states:

> [A]n autodialer might use a random number generator to determine the order in which to pick phone numbers from a pre-produced list. It would then store those numbers to be dialed at a later time. In any event, even if the storing and producing functions often merge, Congress may have "employed a belt and suspenders approach" in writing the statute.

141 S. Ct. at 1172 n.7. But again, it is undisputed that the Aspect UIP was *not* using a random number generator to determine the order in which to pick phone numbers. And Grome takes the footnote out of context: it follows a sentence which explains that an autodialer could include "devices that used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing). The parties agree that is not what the Aspect UIP was programmed to do.

Grome also argues that an IT professional *could* purposefully go around the ALM and Aspect UIP's standard functions, and use Microsoft SQL server commands to create a random or sequential list of numbers that could then be uploaded into the Aspect UIP. *See* filing 53-5 at 10-11; filing 53-6 at 8-10. And, while USAA disputes how much work it would take, it generally agrees that such reprogramming is possible. *See* filing 53 at 14; *see also See* filing 53-7 at 20-23. So, Grome reasons the Aspect UIP has the *capacity* to store and produce telephone numbers using a random or sequential number generator and

therefore qualifies as an autodialer. But the Court is unwilling to adopt such an expansive view of the statutory definition of the autodialer.

Neither the Supreme Court nor the Eighth Circuit have specifically addressed what "capacity" means in the TCPA's definition of automatic telephone dialing system. But other courts agree that the term refers to *present* capacity. *See e.g. King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) (holding that capacity refers to a "device's current functions, absent any modifications to the device's hardware or software."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (holding that plaintiff failed to produce evidence that the equipment "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers."); *ACA Int'l v. FCC,* 885 F.3d 687, 700 (D.C. Cir. 2018) (rejecting an FCC rule with an overly expansive view of capacity). The D.C. Circuit in rejecting the FCC's expansive view of capacity reasoned that "if a device's 'capacity' includes functions that could be added through app downloads and software additions, and if smartphone apps can introduce autodialer functionality into the device, it follows that all smartphones, under [that] approach, meet the statutory definition of an autodialer." *ACA Intn'l,* 885 F.3d at 697.

Here, the undisputed evidence is that the Aspect UIP does not have the present capacity to use a random or sequential number generator to produce or store telephone numbers. Assuming, *arguendo,* that Snyder's opinion is true and an IT professional could go outside the Aspect UIP directly into the Microsoft SQL database directly and use non-standard commands to force the system to generate random or sequential numbers, that would be *introducing* autodialer functionality into the Aspect UIP where it doesn't currently exist. *See ACA Intn'l,* 885 F.3d at 697. And Grome still does not dispute USAA's

evidence that no IT professional ever *actually* took those steps prior to using the Aspect UIP to call Grome. *See generally* filing 60.

Finally, Grome argues that USAA left her 15 pre-recorded voice messages which violate the TCPA, and so even if the Court concludes USAA did not use an automatic telephone dialing system, her complaint should not be dismissed. Filing 60 at 11. But USAA correctly points out that Grome did not allege the unlawful use of prerecorded messages in her complaint, *see* filing 1, Grome's motion for leave to amend her complaint to add allegations regarding the pre-recorded messages was denied, filing 63, and the plaintiff did not object to that order, *see* NECivR 72.2. Accordingly,

IT IS ORDERED:

1.    USAA Savings Bank's motion for summary judgment (filing 52) is granted.

2.    USAA Savings Bank's motion to exclude the expert testimony of Randall Snyder (filing 50) is denied as moot.

3.    Grome's complaint (filing 1) is dismissed.

4.    A separate judgment will be entered.

Dated this 31st day of August, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge

- 11 -